# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
Heard in Nashville
October 2, 2002 Session

## RICKY HARRIS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Carter County**
**No. 10297    R. Jerry Beck, Judge**

---

**No. E1999-02771-SC-R11-PC - Filed April 16, 2003**

---

In this appeal, the dispositive issues are whether a claim that the prosecution failed to disclose exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), is a cognizable basis for reopening a post-conviction petition under Tennessee Code Annotated section 40-30-217(a) and whether the Court of Criminal Appeals erred in sua sponte treating the petitioner's motion as a petition for writ of error coram nobis based upon newly discovered evidence. The trial court denied the petitioner's motion to reopen on the basis that it did not state a cognizable ground for reopening a post-conviction suit under Tennessee Code Annotated section 40-30-217(a). The Court of Criminal Appeals agreed that the motion did not state grounds for reopening under the post-conviction statute, but the intermediate court sua sponte treated the motion as a petition for writ of error coram nobis and concluded that due process precluded application of the one-year statute of limitations to bar the petition.[1] The Court of Criminal Appeals therefore remanded the case to the trial court to consider the merits of the coram nobis claim. From this decision, the State filed an application for permission to appeal, primarily arguing that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. We granted the State's application for permission to appeal,[2] and for the reasons herein stated, this Court concludes that the lower courts correctly held that the motion does not state grounds for reopening under the post-conviction statute but that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. The judgment of the Court of Criminal Appeals therefore is reversed, and the judgment of the trial court dismissing the motion is reinstated.

---

[1]In holding that due process required tolling of the one-year statute of limitations, the intermediate appellate court relied upon <u>Workman v. State</u>, 41 S.W.3d 100 (Tenn. 2001) and <u>Burford v. State</u>, 845 S.W.2d 204 (Tenn. 1992).

[2]On May 6, 2002, this Court appointed Kenneth F. Irvine, Jr. to represent Mr. Harris in this appeal. The Court appreciates Mr. Irvine's willingness to accept this appointment and the excellent representation he and Mr. Robert R. Kurtz have provided Mr. Harris.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Judgment of the Trial Court Reinstated**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which WILLIAM M. BARKER, J., joined. JANICE M. HOLDER, J., filed a concurring opinion. E. RILEY ANDERSON, J., filed a concurring and dissenting opinion, in which ADOLPHO A. BIRCH, JR., J., joined.

Michael E. Moore, Solicitor General, and Mark A. Fulks, Assistant Attorney General, for the appellant, State of Tennessee.

Kenneth F. Irvine, Jr. and Robert R. Kurtz, Knoxville, Tennessee, for the appellee, Ricky Harris.

**OPINION**

**BACKGROUND**

In 1988, the petitioner, Ricky Harris, was convicted of first degree murder and sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal in February of 1991.[3] Harris filed a post-conviction petition in 1992 alleging that his counsel were ineffective and that the State had suppressed exculpatory evidence. The trial court denied post-conviction relief, and the Court of Criminal Appeals affirmed the denial.[4]

On December 10, 1998, just three days after this Court denied Harris's application for permission to appeal, Harris filed a motion in the trial court seeking to reopen his post-conviction petition on the basis that his due process rights under the United States and Tennessee Constitutions had been violated by the State's failure to disclose exculpatory evidence material to his defense. See Brady v. Maryland, 373 U.S. 83 (1963); Sample v. State, 82 S.W.3d 267 (Tenn. 2002).

In particular, Harris alleged that the State withheld the identity of a witness, who was purportedly interviewed via telephone by a law enforcement officer investigating his case. Attached to Harris's motion were purported notes of the alleged interview. These purported notes, which are unsigned and do not include the name of the officer who allegedly conducted the interview, indicate that Ms. Corrine Hampton told the unidentified officer that she had car trouble at approximately 8:25 a.m. on September 8, 1987, on highway 19-E in Hampton, Tennessee; that Harris stopped and assisted her; that she had seen inside his car and inside the trunk of his car; and that she had not seen another person or a dead body anywhere in the car or in the trunk. Ms. Hampton said that she had

---

[3] See State v. Ricky Jerome Harris, No. 85 (Tenn. Crim. App., Knoxville, Nov. 8, 1990), perm. app. denied (Tenn., Feb. 4, 1991);

[4] See Ricky Harris, No. 03C01-9611-CR-00410 (Tenn. Crim. App., April 23, 1998), perm. app. denied, (Tenn., Dec. 7, 1998).

followed the defendant to Sherwood Chevrolet, where he worked, and obtained minor repairs to her vehicle.

In his motion, the petitioner explained the significance and materiality of the alleged interview notes as follows:

> During the trial the State maintained the Petitioner had killed the victim at her home or abducted her and took her to the Carr Cemetery where he disposed of the body or killed her at that point and disposed of the body. The State maintained this occurred between the time period of 8:00 a.m. and 9:00 to 9:30 a.m. Petitioner testified that he did not commit the crime and that he drove from Hampton straight to Sherwood Chevrolet in Johnson City. If the State would have provided this evidence, petitioner could have presented Ms. Hampton as his alibi witness and corroborated his testimony of what events occurred during the morning of September 8, 1987.

As to when he discovered this information, Harris alleged that he received the purported interview notes along with an anonymous, hand-printed letter after he placed an advertisement in the Elizabethton Star newspaper in August of 1998 seeking information about his case that would aid in proving his innocence. The anonymous letter was attached to the petitioner's motion, and it stated that the writer is related to the sheriff who investigated Harris's case and that the writer was shown a copy of the notes of Ms. Hampton's interview by the sheriff, who made the writer promise to keep quiet about the information. According to the letter, the writer later obtained a copy of the interview notes, but was afraid to disclose the information at that time and was doing so in response to Harris's advertisement because the writer had worked with and been a friend of Harris's father.

The trial court denied the petitioner's motion on the basis that it did not state a cognizable ground for reopening under Tennessee Code Annotated section 40-30-217(a). The trial court also pointed out that the petitioner had failed to support his motion with sworn affidavits. The anonymous letter, the anonymous interview notes, and Ms. Hampton's signed statement were not proven or supported by affidavit. The motion was supported by only the petitioner's affidavit which recited the alleged facts. The petitioner subsequently filed in the trial court an affidavit from Ms. Hampton containing the alleged exculpatory statement she allegedly gave to an unidentified law enforcement officer. Interestingly, the affidavit states only that Ms. Hampton had car trouble in September of 1987, but it does not indicate the exact date in September these events occurred. After reconsidering the petition along with the affidavit, the trial court adhered to its initial conclusion that the motion did not state a cognizable ground for reopening under the post-conviction statute. The trial court did not treat the motion as a petition for writ of error coram nobis.

Harris appealed, and the Court of Criminal Appeals agreed with the trial court that a claimed Brady violation is not a ground for reopening under Tennessee Code Annotated section 40-30-217(a). Nonetheless, a majority of the intermediate court sua sponte treated the motion as a petition for writ of error coram nobis and concluded that due process precluded application of the one-year

writ of error coram nobis statute of limitations.[5] The intermediate court therefore remanded the case to the trial court to determine: (1) whether the State suppressed exculpatory evidence; (2) whether the petitioner was diligent and not at fault in failing to raise the issue earlier; and (3) whether the evidence may have resulted in a different outcome.

From this decision the State filed an application for permission to appeal, which this Court granted. For the following reasons, the judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is reinstated.

## ANALYSIS

### I. Motion to Reopen

We begin our review with the threshold issue of whether the lower courts properly determined that the issue raised by the petitioner, *i.e.*, the suppression of exculpatory evidence, was not a proper basis upon which to reopen a post-conviction petition. The State argues that the suppression of exculpatory evidence is not listed in Tennessee Code Annotated section 40-30-217(a) as a ground for reopening a post-conviction petition. The petitioner asserts that, even if the motion did not assert a cognizable ground for reopening, the Court of Criminal Appeals correctly treated it as a petition for writ of error coram nobis.

Under the provisions of the Post-Conviction Procedure Act, a petitioner "must petition for post-conviction relief . . . within one (1) year of the final action of the highest state appellate court to which an appeal is taken . . . ." Tenn. Code Ann. § 40-30-202(a). Moreover, the Act "contemplates the filing of only one (1) petition for post-conviction relief." Tenn. Code Ann. § 40-30-202(c). After a post-conviction proceeding has been completed and relief has been denied, as in this case, a petitioner may move to reopen only "under the limited circumstances set out in 40-30-217." Id. These limited circumstances include the following:

> (1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

_____

[5] In dissent, Judge Witt opined that Workman was expressly limited to capital cases and could not be applied to toll the one-year writ of error coram nobis statute of limitations in this case but that due process may apply in some cases to toll the post-conviction statute of limitations bar of Tennessee Code Annotated section 40-30-202(b).

(2) The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted;  or

(3)  The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid;  and

(4)  It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn. Code Ann. § 40-30-217(a)(1)-(4). The plain language of this statute provides only three grounds for reopening  – a new constitutional right that is given retroactive application, new scientific evidence of actual innocence, and evidence of an improperly enhanced sentence.  A claim that the State suppressed or failed to disclose exculpatory evidence in violation of <u>Brady</u> simply is not one of the statutory grounds for reopening a post-conviction proceeding.[6]  Accordingly, we hold that the trial court and the Court of Criminal Appeals correctly ruled that the petitioner's claim that the State failed to disclose exculpatory evidence is not a cognizable ground for reopening his post-conviction proceeding.

## II.  Writ of Error Coram Nobis

We must next determine whether the Court of Criminal Appeals erred in sua sponte treating the petitioner's motion to reopen as a petition for writ of error coram nobis.  The State argues that the intermediate court erred because the allegations in the motion do not constitute subsequently or newly discovered evidence that the defendant was without fault in presenting at the time of the trial. Further, the State points out that an alleged violation of <u>Brady</u> is not cognizable in a writ of error coram nobis proceeding.  The petitioner, by and through appointed counsel, responds that the Court of Criminal Appeals's action was appropriate because the allegations of the motion sufficiently state a coram nobis claim.  In his pro se application for permission to appeal to the Court of Criminal Appeals, Harris argued that the writ of error coram nobis does not apply in this case and alleged that the trial court had erred by simply referring to <u>Mixon v. State</u>, 983 S.W.2d 661 (Tenn. 1999), which involved a petition for writ of error coram nobis.

---

[6]As the Court of Criminal Appeals pointed out, the General Assembly's intent to exclude <u>Brady</u> claims as grounds for reopening is evidenced by other statutory provisions that provide relief from the procedural bar of waiver when a claim is not raised because of a <u>Brady</u> violation.  <u>See</u> Tenn. Code Ann. § 40-30-206(g)(2)( "failure to present the ground was the result of state action in violation of the federal or state constitution.").  Clearly, the General Assembly knows how to make exceptions for <u>Brady</u> violations.  It simply chose not to include such claims in the statute addressing motions to reopen.

Upon careful consideration, we conclude that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. These proceedings are fundamentally distinct in terms of the governing procedural rules and the grounds for relief. Motions to reopen are filed only after the petitioner has unsuccessfully pursued post-conviction relief. Therefore, the statute governing such motions contemplates a summary proceeding in which the trial court can readily determine whether or not one of the three very narrow grounds for reopening exists. As previously indicated, the three grounds for reopening a post-conviction petition are: (1) a new constitutional right that is given retroactive application; (2) new scientific evidence of actual innocence; or (3) evidence of an improperly enhanced sentence. Tenn. Code Ann. § 40-30-217(a)(1)-(4). Because all of these grounds can and likely will be proven by documentary evidence alone, there will rarely be a factual dispute as to their existence. When a ground for reopening is proven, the only factual dispute will be whether or not the petitioner has established by clear and convincing evidence that he or she is entitled to have the conviction set aside or the sentence reduced. Tenn. Code Ann. § 40-30-217(a)(4). Again, because of the nature of the grounds for reopening, even this factual issue should be relatively uncomplicated. Therefore, although the State may choose to respond to a motion to reopen, the statute certainly does not require the filing of a response. Where, as here, a motion to reopen is denied, the petitioner has only ten days to file an application for permission to appeal in the Court of Criminal Appeals, with the State having ten days to respond. Tenn. Code Ann. § 40-30-217(c). The record on appeal therefore is minimal, consisting of the application which must have attached to it all documents filed by both parties in the trial court and the order denying the motion. Id.

Writ of error coram nobis claims in criminal cases are governed by a different statute, Tennessee Code Annotated section 40-26-105,[7] which currently provides:

> [u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

---

[7]As this Court has recognized, "[t]he writ of error coram nobis is an extraordinary remedy known more for its denial than its approval." State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). The writ of error coram nobis was limited in scope in Tennessee to civil proceedings until the General Assembly passed a statute in 1955 extending it to criminal proceedings. Id. at 668. Criminal coram nobis proceedings were "to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except in so far as inconsistent herewith." 1955 Tenn. Pub. Acts 166. However, in 1971, Rule 60 of the Tennessee Rules of Civil Procedure became effective and superseded the writ of error coram nobis in civil cases. Mixon, 983 S.W.2d at 668. Because the General Assembly has never repealed the statute, the writ of error coram nobis continues to be a remedy in criminal actions, but "the procedure governing the remedy is based upon the civil writ of error coram nobis which has been abolished for almost 28 years." Id. The statutes thus give rise to an anomalous situation – an existing remedy that is governed by antiquated procedural rules. Id. Nonetheless, the General Assembly has not resolved this anomaly since it was first pointed out four years ago in Mixon.

-6-

The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing. The coram nobis statute also does not contain provisions for summary disposition or expedited appeals. Even more significant to the issue in this appeal, however, is a distinction relating to the statute of limitations. In motion to reopen proceedings, the petitioner must set out the factual basis for his or her claim, including facts to show that the motion has been timely filed within one year of the ruling establishing a new retroactive constitutional right or within one year of the ruling holding a previous enhancing conviction invalid. See Tenn. Code Ann. § 40-30-217(1) & (3). Although coram nobis claims also are governed by a one-year statute of limitations,[8] the State bears the burden of raising the bar of the statute of limitations as an affirmative defense. See Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995).

The distinctions between motion to reopen and coram nobis proceedings illustrate why it will rarely, if ever, be appropriate for an appellate court to sua sponte treat a motion to reopen as a petition for writ of error coram nobis. In doing so, the appellate court will deprive the State of an opportunity to file an appropriate response in an error coram nobis proceeding, and the trial court, which is accustomed to resolving the factual disputes likely to arise, will be deprived of the opportunity to determine the merits of the petition in light of the State's response. In sua sponte treating the motion to reopen as a petition for writ of error coram nobis, the Court of Criminal Appeals in this case apparently failed to consider the fundamental distinctions between these proceedings. The intermediate appellate court's reliance upon Norton v. Everhart, 895 S.W.2d 317, 319 (Tenn. 1995), as authority for its action was misplaced. In considering whether a trial court had the authority to treat a habeas corpus petition as a petition for writ of certiorari, this Court in Norton stated:

> It is well settled that a trial court is not bound by the title of the pleading, but has the discretion to treat the pleading according to the relief sought. Fallin v. Knox County Board of Commissioners, 656 S.W.2d 338, 342 (Tenn.1983); State v. Minimum Salary Dep't. of A.M.E. Church, 477 S.W.2d 11, 12 (Tenn.1972).

Id. at 319 (emphasis added). The decision in Norton recognizes the authority of trial courts to treat a pleading in accordance with the relief sought.[9] However, the decision in Norton does not support

---

[8] See Tenn. Code Ann.§ 27-7-103("[t]he writ of error coram nobis may be had within one (1) year after the judgment becomes final . . . ."); State v. Mixon, 983 S.W.2d 661, 669 (Tenn. 1999).

[9] The concurring opinion indicates that, because the pleading was titled "motion to reopen petition for post-conviction relief or in the alternative motion for a new trial based on newly discovered evidence," the petitioner on appeal could have complained that the trial court erred in failing to treat the pleading as a petition for writ of error coram nobis. We disagree. As a practical matter, such a rule would unnecessarily expend judicial resources and fundamentally
(continued...)

the notion that appellate courts may independently examine motions to reopen to determine whether the petitioner should have pursued a completely different avenue of relief in the trial court. Appellate review generally is limited to the issues raised and decided in the trial court. See, e.g., Tenn. R. App. P. 13 & 36. Adherence to this principle is particularly important in the context of motions to reopen given the limited, summary, and expedited nature of such proceedings. Indeed, were appellate courts to routinely evaluate such motions and address grounds never litigated nor decided in the trial court, the summary nature of such proceedings would be irrevocably altered. Therefore, we conclude that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis. Having so decided, we need not address any issues relating to the one-year coram nobis statute of limitations.[10]

### CONCLUSION

For the reasons stated herein, the judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court dismissing the motion is reinstated. Costs of this appeal are taxed to the appellee, Ricky Harris, for which execution may issue if necessary.

---

[9](...continued)
alter motion to reopen proceedings. For example, to avoid a remand, trial courts likely would evaluate the merits of every possible alternative claim, even where, as here, the petitioner does not actively pursue the alternative claim. The State would also likely respond to the alternative claims to raise any applicable affirmative defenses, transforming the summary motion to reopen proceeding into lengthy litigation. Given the fundamental differences between motions to reopen and petitions for writ of error coram nobis, a petitioner who is seeking to have the trial court consider both of these avenues for relief must be required to actively pursue both in the trial court. When a petitioner does not do so, he or she should not be heard to complain on appeal about the trial court's failure to evaluate the merits of the alternative claim for relief.

[10]While we reserve this question for another day, we feel compelled to point out in response to the dissenting opinion that the threshold inquiry in the Burford due process analysis is whether a petitioner has alleged a "later-arising" prima facie claim which will be precluded by strict application of the statute of limitations. See, e.g., Burford, 845 S.W.2d at 209; Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995). In this case, the evidence upon which Harris relies does not appear to be "newly discovered" nor does Harris appear to be "without fault" in failing to previously present it. As the State points out, if the allegations are true, at 8:30 a.m. on the day the victim disappeared, Harris stopped along the roadside and rendered assistance to a stranded motorist. Harris apparently searched his trunk for the appropriate tools, tightened the fan belt on the motorist's car, and started the car. Throughout these activities, the motorist accompanied Harris, allegedly observing his actions as well as the trunk and interior of his car. Therefore, if the allegations are true, Harris was acutely aware of the existence of the stranded motorist prior to his initial trial. Moreover, Harris appears to be at fault in failing to previously present this evidence prior to trial since he failed to disclose her existence and gave a statement to police indicating that he drove directly from the victim's home to his work place on the morning of the victim's disappearance. Thus, the evidence upon which Harris relies does not appear to be subsequently or newly discovered, and Harris does not appear to be "without fault" in failing to previously present this evidence. Therefore, accepting for the sake of argument the dissent's proposition that the Burford due process analysis applies in this case, Harris would not be entitled to relief from the one-year statute of limitations. Indeed, it would not be necessary for a court to engage in the balancing portion of the analysis because the proof upon which Harris relies does not appear to state a prima facie later-arising claim under the writ of error coram nobis statute.

_____

FRANK F. DROWOTA, III,
CHIEF JUSTICE