IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2017

## CHARLES PHILLIP MAXWELL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County
No. 2008-D-3374    Monte D. Watkins, Judge**

_____

### No. M2016-02380-CCA-R3-ECN

_____

The Petitioner, Charles Phillip Maxwell, appeals the Davidson County Criminal Court's denial of his petition for a writ of error coram nobis from his driving with a suspended license conviction and his thirty-day sentence, which was suspended to probation after twenty-four hours in confinement. The Petitioner contends that the court erred by denying relief and improperly ordered him to pay court costs associated with his petition. We affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. TIMOTHY L. EASTER, J., not participating.

Charles Phillip Maxwell, Nashville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Glenn Funk, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to a traffic stop during which the Petitioner was issued a citation for driving a motor vehicle when his license was suspended. *State v. Charles Phillip Maxwell*, No. M2009-02323-CCA-R3-CD, 2011 WL 345872 (Tenn. Crim. App. Feb. 1, 2011), *perm. app. denied* (Tenn. May 26, 2011). The Petitioner appealed, and in its opinion affirming the conviction, this court summarized the facts as follows:

> Officer Coleman Womack of the Metro Nashville Police Department testified that on March 5, 2008, he was assigned to the traffic division and was traveling on Bell road in Davidson County when he observed the

Defendant not wearing a seatbelt. The Defendant was driving a 1987 black Chevrolet Celebrity. Officer Womack stopped the Defendant and asked for his driver's license. The Defendant told him that he did not have a driver's license. Officer Womack "ran a status check" on the Defendant for "his driver's license status" and learned that the Defendant's driver's license had been suspended. Officer Womack gave the Defendant a citation and instructed the Defendant to pull into a Kroger parking lot and have someone drive him home.

On cross-examination, Officer Womack admitted that he initially drafted a citation for "driver's license required." Officer Womack testified that after he learned that the Defendant's license had been suspended, he corrected the citation before giving the citation to the Defendant. Officer Womack explained that the computer had been slow and that sometimes "it takes a minute to come back." Officer Womack testified that even though the status check revealed that the Defendant's license had been suspended, it was possible that the Defendant had never actually applied for a driver's license. He explained that if the Defendant had been stopped and cited for not having a driver's license, the department may have assigned the Defendant a driver's license number in order to document that the Defendant's privilege to drive had been suspended. However, he could not testify as to whether that had occurred in the Defendant's case because the records merely reflected that the Defendant's license had been suspended.

Kenneth Wade Birdwell of the Tennessee Department of Safety testified that he was the director of the financial responsibility office, which maintained the driving records in Tennessee. Mr. Birdwell testified that the Defendant's driver's license had been suspended and that his status had not been changed on March 5, 2008. Mr. Birdwell stated that according to the records maintained by the department, the Defendant applied for a driver's license and that a license was issued to the Defendant on August 31, 1989. On cross-examination, Mr. Birdwell admitted that he was only able to testify that the identifying information contained in the documents matched the Defendant, not that the Defendant was actually the person referenced in the records. Mr. Birdwell also testified that a person's privilege to drive may be suspended even if a person did not have an actual driver's license.

*Id.* at *1.

The Petitioner included in his error coram nobis petition and in an appendix to his appellate brief a petition for post-conviction relief, which he purports to have filed with the court. However, the petition does not reflect a post-conviction court filed stamp. The post-conviction petition alleged that appellate counsel provided ineffective assistance

because counsel did not raise allegations disputing the trial court's jurisdiction and the validity of the driver's license laws. The Petitioner stated that he was denied relief after an evidentiary hearing. It does not appear that the Petitioner sought appellate review from the post-conviction court.

On February 11, 2016, the Petitioner filed the instant petition for a writ of error coram nobis, alleging that the trial court judge and his appellate counsel "conspired against" him. He alleged that counsel was a "plant" by the trial judge, who instructed counsel not to communicate with the Petitioner. He argued that counsel "refused to present . . . supervisory controllers of [his] 'appeal' any brief of any preserved issues on appeal . . . to include, multiple valid defenses in law and fact[.]" He accused the trial judge of violating his "fundamental right to counsel . . . for any 'pretrial' defense filings . . . and to allow time for . . . counsel to review and prepare for the purported case." He alleged that the trial judge refused to remove counsel from his case and that counsel provided "intentionally defective, ineffective, and negligent counsel for [the] appeal."

Relative to newly discovered evidence, the Petitioner alleged in his petition that on "10th day of the second month of the year A.D. two thousand sixteen," he learned that appellate counsel's "acts represented a pattern of conspiratorial acts for which she was caught and suspended from her practice as counsel in her nonsovereign BAR Association[.]" The Petitioner referenced a Tennessee Board of Professional Responsibility notice in which the supreme court suspended counsel's law license for one year but allowed counsel to serve the suspension on probation and to continue practicing law as long as counsel satisfied certain conditions.

The Petitioner argued the following:

Said facts constitute error of violation of counsel (and various defense issues preserved) which are **errors** dehors the record and **matters** **that were not or could not have been litigated** on the trial of the case, **on appeal** in the nature of a writ of error proceedings; denied and without counsel [he] did all possible to prevent the above for all of which, this petition is warranted.

The coram nobis court appointed counsel to represent the Petitioner, and approximately one month later, the Petitioner filed a pro se document entitled, "CORRECTION OF THE RECORD." In relevant part, the Petitioner alleged that his appointed counsel had "refused to act, or is incapable of acting effectively as counsel," and "does not understand the Constitution of the State of Tennessee 1870 to include, Article I, Section 9 and the term 'counsel' thereof; as well as, its statement that both the accused and counsel can be heard." Appointed counsel sought permission to withdraw from his representation, and the coram nobis court granted the motion and appointed subsequent counsel. Less than one month later, subsequent counsel, likewise, sought

permission to withdraw as counsel of record, stating that counsel could not "advance the position that [the Petitioner] wishes to argue without violating the Tennessee Rules of Professional Conduct" and that counsel "does not have to be subjected to insults regarding his person, profession, and professionalism during the course of the representation." In response, the Petitioner filed a pro se document entitled, "Notice and Demand," in which the Petitioner "demand[ed]" that subsequent counsel be removed from his case as a result of counsel's ineffectiveness and that he receive the "aid of counsel" from another attorney. The coram nobis court permitted subsequent counsel to withdraw from the case and continued the case in an effort to allow the Petitioner time to identify an attorney the Petitioner would find acceptable. The court stated that it would appoint such an attorney to represent the Petitioner. The record does not reflect what, if anything, occurred at the next scheduled court date.

In any event, the coram nobis court entered an order denying relief. The court determined that the Petitioner's allegation was that he received the ineffective assistance of counsel. Although the court's order states that the "proof and argument presented at the hearing do not provide any new evidence that a different judgment would have resulted," the trial court clerk's response to this court's order to supplement the record with the hearing transcript reflects that no hearing was held. In its order denying coram nobis relief, the court determined that the Petitioner did not present newly discovered evidence as a basis for his petition. This appeal followed.

The Petitioner contends that the coram nobis court erred by denying relief. He argues that his right to appeal his conviction was violated by appellate counsel's ineffective assistance. He argues counsel failed to raise and pursue valid preserved appeal issues, depriving him of his right to appeal. He also contends that the court improperly ordered him to pay the court costs associated with his petition.

Tennessee Code Annotated section 40-26-105(b) (2012) provides that coram nobis relief is available in criminal cases as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Unlike the grounds for reopening a post-conviction petition, the grounds for seeking a writ of error coram nobis are not limited to specific categories. *Harris v. State*,

102 S.W.3d 587, 592 (Tenn. 2003). Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at trial" so long as the petitioner establishes that he or she was "without fault in failing to present the evidence at the proper time." *Id.* at 592-93. In a coram nobis proceeding, the court first must consider the newly discovered evidence and be "reasonably well satisfied with its veracity." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007). If the defendant is without fault because the exercise of reasonable diligence would not have led to a timely discovery of the new information, the court must examine both the evidence presented at the trial and during the coram nobis proceedings to determine whether the new evidence may have led to a different result. *Id.* The decision to grant or deny coram nobis relief rests within the sound discretion of the court. *Id.* at 527-28.

The Petitioner's allegations are not cognizable for error coram nobis relief. Ineffective assistance of counsel claims, even if based upon newly discovered professional displinary notices, are proper for post-conviction petitions. We note that it appears, based upon the Petitioner's assertions in his coram nobis petition and in his appellate brief, that he alleged counsel's ineffective assistance in an unsuccessful post-conviction petition. Based upon the Petitioner's assertions, this issue of appellate counsel's effectiveness has been previously determined. *See* T.C.A. § 40-30-106(f), (g) (2012). Likwise, the Petitioner's argument that he was denied his right to appeal his conviction because of counsel's ineffectiveness is appropriate for post-conviction relief, not error coram nobis relief. The record does not reflect that the Petitioner obtained newly discovered evidence as contemplated by our statutes related to his conviction for driving a motor vehicle when his license was suspended. Therefore, the Petitioner is not entitled to relief.

Relative to the Petitioner's contention that the coram nobis court improperly ordered him to pay the court costs associated with his petition, the Petitioner does not present any argument supporting his contention and does not address it in the issues section of his appellate brief. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived[.]" Tenn. Ct. Crim. App. R. 10(b). Therefore, the issue is waived.

_____
ROBERT H. MONTGOMERY, JR., JUDGE